CASTLE and others, Respondents, vs. CITY OF MADISON and others, Appellants.

*January 30—February 18, 1902.*

*Water and water courses: Mill dams: Action to abate: Interveners:* Res adjudicata: *Orders* pendente lite: *Judgments: Riparian owners: Prescriptive rights: Necessary parties: Plea in abatement: Presumptions: Practice: Appeal and error: "Aggrieved party."*

1. An order denying a motion of defendant to require plaintiff to bring in additional parties, because necessary parties to the action, is not *res adjudicata* as against third parties subsequently intervening, where the rights of such interveners are not dependent upon or in privity with those of defendant.

2. A motion made *pendente lite* was denied on the ground that the same question had been once before determined in the court. *Held*, that the former order had not become *res adjudicata* because the court had not the power to alter its ruling, but because the court might decline to submit to be harassed by repetitions of motions based on the same grounds, and therein such order differs from a judgment.

3. In an action against a city to abate a mill dam owned by it and situated at the outlet of a navigable lake, an answer alleging that the riparian owners thereon have acquired prescriptive rights to have the artificial level, as created by the dam, maintained, sufficiently alleges that such owners are necessary parties to the action.

4. In such action where the answer set out a plea in abatement for defect of parties defendant, alleging that 256 riparian owners, naming them, were necessary parties, the court will not assume that, because they were numerous, it was impracticable to bring all such owners into the suit.

5. Under sec. 3048, Stats. 1898, providing for review on appeal "by any aggrieved party" of judgments and orders, a defendant, owner of a dam sought to be abated, is an "aggrieved party," and may appeal from an order sustaining a demurrer to a plea in abatement for defect of parties, although such plea was interposed by interveners seeking to protect alleged prescriptive rights to have such dam maintained.

APPEAL from an order of the circuit court for Dane county: EUGENE S. ELLIOTT, Judge. *Reversed.*

This is an equitable action, brought to abate a dam on the Catfish creek at the outlet of Lake Mendota, alleged to be owned and maintained by the defendant city of *Madison*. The complaint at considerable length sets out that plaintiffs are the owners of lands which are overflowed by said dam, the circumstances under which the dam was built, an abandonment of the purpose for which it was built, and the fact that the city is maintaining it at a greater height than it had any right to, which increases the overflow of plaintiffs' lands, and causes them damage. The prayer for relief is that the dam be abated, and that the city be enjoined from obstructing the natural flow of the stream from the lake.

The city answered that Lake Mendota was a navigable body of water about twenty-five miles in circumference. The answer then puts in issue some of the allegations regarding ownership and overflow of the lands mentioned in the complaint; sets out at length the circumstances and authority by which the dam was built in 1849 or 1850, the raising of the water in the lake about four feet, and a continuous maintenance of said head at a uniform level ever since. It alleges title in the defendant by mesne conveyances from the original owners, denies raising a head of water higher than it has been kept for more than forty years. As a special defense the city then set up that the dam so erected was for the purpose of raising the level and improving the water power of the lake, and which caused the water to set back and spread and overflow in many places, and made new margins and boundaries for the lake, and that the city's grantors had obtained a prescriptive right to such overflow, which right the city now possesses; that some twenty or more of its streets lead to said lake, and since said overflow the city has graded and adjusted said streets in accordance with said increased level. That the east shore of the lake is covered with many costly homes and summer cottages, and many valuable improvements have been made with reference to the new level,

and much money expended to cause said property to conform thereto, and that very many of the owners of said property have obtained a prescriptive right to require said level to be maintained. The answer gives the names of a large number of property owners who have made such improvements, who have demanded of the city that it protect their interests in the maintenance of said dam, and alleges that they are proper parties to this action, and necessary to a complete determination of the interests involved. Later the city obtained an order to show cause why the property owners named should not be made parties defendant. On December 3, 1900, the court made an order denying such motion.

Later a number of property owners made petition setting out their interest in the litigation, and asking to be made parties, and the court made an order allowing them to intervene in their own behalf, but not for other riparian owners. Such interveners made answer putting many of the allegations of the complaint in issue, and by way of abatement set up the interests of other landowners bordering on the lake, whose rights were involved in this litigation, to the number of 256. The list gave the names and addresses of all the owners of the land shown by the records to be interested in the suit, and asked that they be made parties to the action. A further answer in bar of the action was made, but which is not material to the present inquiry.

The plaintiffs demurred to the matter set up in abatement on the ground that it appears on the face of the answer that the parties sought to be brought in were not proper or necessary parties to the action. The demurrer was heard by the late Judge ELLIOTT sitting for Judge SIEBECKER, and was sustained on the ground that the former order of December 3, 1900, was *res adjudicata.* An order sustaining the demurrer and dismissing the plea in abatement and requiring the defendant interveners to pay $10 costs was entered September 27, 1901.

The city and the several interveners take an appeal from
the order of December 3, 1900, and from the order of Sep-
tember 27, 1901. Upon motion of plaintiffs the appeal
from the order of December 3, 1900, was dismissed by this
court on January 7, 1902. A motion to dismiss the appeal
of the city from the order of September 27, 1901, was held
over until the argument of the case, and is here to be con-
sidered.

For the appellants there was a brief signed *John A. Ayl-*
*ward,* city attorney, *B. J. Stevens, John M. Olin,* and *A. L.*
*Sanborn,* attorneys for appellants, and oral argument by
*Mr. A. L. Sanborn* and *Mr. John B. Sanborn.*

*A. W. Anderson* and *J. E. Messerschmidt,* for the re-
spondents.

BARDEEN, J. The appeal from the order of December 3,
1900, having been heretofore dismissed, we have here only
to consider the appeal from the order sustaining the demur-
rer to and dismissing the answer in abatement. By that
answer the interveners sought to bring in as parties all per-
sons owning property on the shores of Lake Mendota affected
by the overflow caused by the dam at the outlet of the lake.
The court below sustained the demurrer on the sole ground
that, because the court had theretofore denied the right of
the city to require such additional parties to be brought in,
it was *res adjudicata,* and binding upon the court in all sub-
sequent proceedings in the case. The court was evidently
in confusion in the matter. The former order had been
made before the interveners had been made parties to the
suit. They had had no day in court on the question in-
volved. They were seeking to protect their own rights,
and to prevent further harassing litigation. Conceding, for
the purpose of the argument, that their answer was well
founded, to say that their rights had been concluded and cut
off by proceedings had in the action before they had an op-

portunity to be heard would be little less than absurd. Their rights in the litigation were not dependent upon or in privity to those of the city. On the contrary, they come in as adversaries of the city, intent upon compelling it to maintain the head of water as of old, that their property might not be destroyed. In that view they were in no way bound to yield to former rulings of the court that were inimical to their interests. The case bears not the slightest parallel to the cases cited by plaintiff's counsel, of which *Dick v. Williams,* 87 Wis. 651, is a type. In that case there were three successive motions to set aside a judgment on the same grounds. The first was denied without prejudice, the second was denied absolutely, and the third was also denied absolutely, and the order appealed from. It was said that when the last motion was made the matter was *res adjudicata.* This was upon the theory the party had already had his day in court upon the same subject matter. All the cases cited to support that decision were rulings upon motions after judgment. When a case has once ripened into a judgment its binding force becomes complete, and the doctrine of *res adjudicata* applies with all its limitations. Without statutory authority the court has no power to relieve the parties therefrom. Not so with rulings made while the case is pending. While the court may, and often does, deny motions made *pendente lite* on the ground that the same question has been once before determined in the court, it is not because the court has not the power to alter his ruling, but rather because the court will not submit to be harassed by repetitions of motions based upon the same ground. In this case a ruling had been made involving substantially the same legal principles as were involved in the demurrer presented. The parties then before the court were different from those concerned in the former hearing. The ruling first made was not binding upon them. The court still had the power to change the former ruling. That ruling was only binding

to the extent that the court chose to make it. It was not *res adjudicata* in the sense that it bound both court and the parties before it. It was binding in the sense that, as between the same parties and upon the same showing, the court was not bound to entertain it a second time. Probably all the court intended to say was that, as the judge before whom the action was pending had made a ruling involving substantially the same question, he felt bound to follow the decision so made to save future embarrassment. See *Clopton v. Clopton* (N. D.), 88 N. W. Rep. 562. The rule argued for, that the interveners must take the case as they find it, has no application in a case like this, for the reasons already stated.

We come now to the question of whether, under the facts disclosed, these various property owners are necessary and indispensable parties to this litigation. We are well satisfied that the allegations of the answer are sufficient to indicate that such adjoining owners are substantially in the position assumed by the plaintiffs in *Smith v. Youmans,* 96 Wis. 103. There it was held that the artificial state or condition of flowing water, founded on prescription, becomes a substitute for the natural condition previously existing, from which a right arises on the part of those interested to have the new condition maintained; or, to be more definite, the plaintiffs who had, for the period of prescription, enjoyed the advantages of the artificial level of water created by the defendant's dam, and in reliance upon its maintenance had improved their property at great expense, and conformed it to the changed conditions, had an easement on their part to have the waters kept at such higher level, and the right to prevent the lowering thereof to their injury by the owner of the dam, at least so long as he did not abandon or surrender his easement to flood the lands. The recent case of *Kray v. Muggli,* 86 N. W. Rep. 882, decided by the supreme court of Minnesota, expressly follows the *Smith*

Castle v. Madison, 113 Wis. 346.

*Case,* and demonstrates that the doctrine announced is not new in the jurisprudence of this country. The demurrer admitting the facts to be as stated, the question immediately arises whether the property owners who are affected by the removal of the dam are necessary and indispensable parties to the litigation. The question of who are and who are not proper and necessary parties to pending litigation has given rise to very much discussion in the books, and more or less refinement may be found in the decisions. Our statute (sec. 2602, Stats, 1898) says:

"All persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs, except as otherwise provided by law."

Sec. 2603 declares that:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein."

By sec. 2604 those who are united in interest must be joined as plaintiffs or defendants. If one who should be joined as plaintiff will not consent, he may be made a defendant. When the question is one of common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one may sue or defend for the benefit of the whole. Under the technical rules of the common law it was not considered possible for two or more persons to be united as plaintiffs in the same action upon a contract unless they were, for all the purposes of that action, equally united in interest, unless the benefit of the contract belonged to them as a unit, and unless the right in them was created at the same time and by the same act. And the same rule was applied to the joinder of defendants. The common law knew nothing of defendants against whom a judgment for the entire amount of debt and damages was not to be rendered, nor of defendants who

Castle v. Madison, 113 Wis. 346.

become liable at different times, and upon separate instruments. Pomeroy, Code Rem. § 60. The revolution contemplated by the Code has been, in a measure, defeated by attempting to interpret it according to common-law principles. It was deemed that it had not abolished the ancient legal conceptions as to parties and joint rights and liabilities, and hence the Code was fenced around by a series of decisions on this subject rendering it much less revolutionary than its framers evidently designed. It has been said—and the statement appeals to us with considerable force—that these ancient rules of the common law ought to have but meager weight as against the plain and obvious purpose of the Code to simplify and remove the difficulties of the former practice. The rules of practice under the régime of equity were in every way different from these legal doctrines. The legal notion of a necessary unity in the rights of the plaintiffs or in the liabilities of defendants was not known or recognized in equity. The great range of precedents on this subject may be found in any text-book on equity jurisprudence. It is plain from a cursory reading of the sections of our statute mentioned that they are broad and comprehensive enough to cover the entire field of ancient equity rules. They are without exception or limitation, and usually have been construed as being of equal breadth and scope with the rules of equity as administered in England when applied to suits in equity. It is perhaps to be regretted that the early expositors of the Code should have found it necessary to apply its language in one way as to legal actions, and the same language in another way as to suits in equity. The natural and fundamental ideas which seemed to control in suits in equity were that the suit should be prosecuted by the party really in interest, although there might be joined with him others who had an interest in the subject-matter and in the relief sought, and that all persons whose presence was necessary to a complete determination

of the questions involved should be made parties, so that in one decree their rights, claims, interests and liabilities, however varying in importance or extent, might be adjudicated and enforced by the court.  1 Daniell, Ch. Pl. & Pr. 190, thus lays down the rule:

"It is the constant aim of a court of equity to do complete justice by deciding upon and settling the rights of all persons interested in the subject of the suit, so as to make the performance of the order of the court perfectly safe to those who are compelled to obey it, and to prevent future litigation.   For this purpose all persons materially interested in the subject ought generally, either as plaintiffs or defendants, to be made parties to the suit, or ought, by service upon them of a copy of the bill, or notice of the decree, to have an opportunity afforded of making themselves active parties in the cause, if they should think fit."

A discussion of this question by Chief Justice FULLER in *California v. S. P. Co.* 157 U. S. 229, is of the most helpful character.  After stating that the court usually followed the former practice of the equity courts of England in analogous cases, he discusses the rule as to indispensable parties to a suit in equity.   There are, it is said, three classes of parties to a suit in equity:

"(1) Formal parties.   (2) Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it.   These persons are commonly termed 'necessary parties'; but, if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties.   (3) Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

Many cases might be cited announcing the same rules in general terms. In view of these rules, an intimation by the Minnesota court in *Kray v. Muggli,* 86 N. W. Rep. 882, that they were "aware of no rule of law under which all such parties could be compelled to join in such action," is not to be taken as establishing that such law does not exist. We gather from the cases that this idea is always prominent in the mind of the chancellor; that, if a person is so affected by the decree that his property interests are impaired or destroyed by its enforcement, he is an indispensable party to the litigation, and it cannot proceed without his presence, unless the case is brought within the rule of one representing a class. This latter question is not in this case. By the ruling appealed from the court held, in effect, that the other property owners were not even necessary parties to the action, and, that being so, the attempt of the interveners to bring them in must fail. We have already shown that the landowners bordering on the lake have a prescriptive right, assuming the allegations of the answer to be true, to have the city keep the water of the lake up to its artificial level, so long, at least, as it has not abandoned or surrendered its easement to flow the lands. If this action should proceed to judgment against the city, an attempt to enforce it would be a direct invasion of their rights, and injurious to their property. Not being in court, or being in any way represented therein, they are not bound by such judgment, and the city might be called upon to defend innumerable suits involving the same question. Not only that, but each landowner might be called upon in any or all of these suits to assert his rights, and litigation without end ensue. The direct object of the statute and all rules of equity procedure is to prevent any such needless and unjust complications. It is not only for the interest of the city, but for the plaintiffs and interveners as well, to have one suit settle the entire question, so that when the final judgment is entered the rights of all con-

cerned can be ascertained and adjudged. In that respect the order appealed from was plainly wrong upon the reasons given for its entry, and as plainly wrong when the answer is considered on the merits.

It is argued that it is impracticable to bring in all the riparian owners, and that all interests are represented in the suit as it is. This contention cannot be sustained. It is not shown that it is impracticable to bring all the owners into the suit. We shall not assume that it is because they are numerous. Further, the owners who have been let in are not here in a representative capacity. The order making them parties allows them in on their own behalf alone, and not on behalf of any other riparian owner. If it be shown that there is difficulty in making the numerous owners defendants, and the court believes that some may be proceeded against as representatives of a class under the statute, so that the litigation as carried on will end the controversy as to those thus represented, the court may so determine when the merits of the answer in abatement are considered. But see *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493.

The motion to dismiss the appeal of the city must fail. The city is the most interested party to this litigation. It stands liable to be ground between the upper and the nether millstone. It may stand in an adversary position as against all the parties in interest. On the one side the parties are calling for an abatement of the dam. On the other they are insisting that the dam be maintained as of yore. A ruling which denies the right of having this controversy determined in one suit is one in which the city is aggrieved. Under sec. 3048 it had a right to appeal because of that fact.

On the one side it is claimed that the demurrer to the matter in abatement reaches back and challenges the first defective pleading, and that the complaint does not state a cause of action; on the other, that a demurrer to an answer in abatement does not reach defects in the complaint. We

do not deem it necessary or expedient to determine this question, or to consider the merits of the complaint at this time. It is considered best to postpone the consideration of the legal question involved in this case until the facts are disclosed upon a trial, rather than take them up on the allegations in the pleadings, which may not be supported by the facts. The question of the sufficiency of the complaint is therefore expressly reserved, and is not to be considered as having been passed upon.

*By the Court.*—The motion to dismiss the appeal of the defendant city of *Madison* is denied, with $10 costs. The order sustaining the demurrer to the answer is reversed, and the cause is remanded, with directions to overrule the demurrer, and for further proceedings according to law.