Hurlbut, J.,
rendered the opinion of the court.
September 24, 1909, plaintiffs in error as plaintiffs below brought this action against defendant in error. The prayer of the complaint ales for judgment in the sum of $22,089.70; and also for general equitable relief. A writ of attachment was sued out in aid of the action and levy made on defenant’s property. The case was tried to the court and it found for defendant, dismissing the action and dissolving the attachment.
The controlling object of the action, as appears from the complaint, is to recover from defendant the sum above specified. The complaint states in substance that in July, 1907, plaintiffs remitted to defendant the sum of $25,000 for the express purpose of purchasing a group of five mining claims in the Round Mountain mining district, state of Nevada; that defendant represented to them he was obliged to pay $25,000 for said claims, while in truth and in fact he only paid $625 therefor; that it was agreed and understood by all the plaintiffs and one Moyer- (deceased), as well as defendant, that the claims,were to be purchased by them all, for their common interest and benefit; that plaintiffs reposed absolute confidence and trust in defendant to make the purchase and complete the 'transaction, for the common benefit of all; that for a long time prior to the purchase of the claims plaintiffs and said Moyer had been interested with defendant in mining operations in Boulder county, Colorado, and that in such operations defendant acted for and represented plaintiffs, which fact, as alleged, 'caused plaintiffs to repose full confidence and trust in defendant to> negotiate and- make the purchase aforesaid; that at all times plaintiffs were residents of the state of Pennsylvania, and defendant of the state of Colorado; that in June,. 1907, defendant ;went -from Colorado to said Round Mountain district and- made an examination of the claims purchased. *390 and thereafter represented to plaintiffs that he could procure an option to' purchase the claims for the sum of $25,000, that they were very rich in gold, and that if plaintiffs and Moyer would join him in raising that amount they would all become owners thereof with him; that they relied implicitly upon the statements made by defendant in that behalf, apd associated themselves together with him and raised the $25,000; that in order to raise said amount, all the plaintiffs, Moyer, and defendant, joined in the execution of promissory notes in that amount; that the representations of defendant as to the amount of the purchase price were wholly false, and defendant knew them to’ be false when he made them; that instead of paying $25,000 for the five claims, he only paid $625 therefor, and converted the balance to. his own use. It is also alleged that after the purchase defendant paid upon said promissory notes of $25,000 the sum of $2,285.30, which plaintiffs concede should be credited to defendant, as well as $625 which defendant paid for the claims as aforesaid. It is further alleged that in the misrepresentations made by defendant concerning the price paid for the claims defendant was guilty of fraud and wilful deceit, and that they were made for the purpose of deceiving plaintiffs and Moyer, and did in fact deceive them. An amendment to the complaint was filed, containing a full narrative of the maturity and renewals of said $25,000 notes, and averring that upon the maturity of the last renewal thereof plaintiffs and Moyer fully paid and discharged the same.
After a number of demurrers and motions on behalf of defendant were disposed of by the court, defendant filed his answer denying any fraudulent or wrongful acts on his part, or any false representations by him concerning the transaction in question. The answer admits, however, the receipt of the $25,000 by defendant as alleged in the complaint, but claims as a defense that plaintiffs were buying the property from him as an individual, at the agreed price of $25,000; further alleging that there was no agreement or understanding between *391 plaintiffs and defendant that the claims were to be purchased by them for the common benefit of all. Replication was duly filed.
Although the pleadings are somewhat lengthy_ we think the above statement- shows in a general way the issues upon which the litigation is predicated. The entire transaction, including the alleged fraud, misrepresentations and deceit of defendant, which culminated in the remittance of the $25,000 to defendant, and the purchase of the five claims by him, is shown and established by documentary evidence consisting of about one hundred letters and fifteen telegrams, which passed between defendant and plaintiff Barton between May and November, 1907.
At the trial defendant Blaisdell, plaintiffs Reyer - and Barton, and one Neis Paulson, testified as witnesses, defendant being the only witness who appears to- have testified for the defense. We will not attempt to comment in detail upon the evidence that appears in this ponderous record, but will say that we have read it all carefully, and have arrived at the conclusion that, taking it altogether and making allowance for some unimportant discrepancies, the actions, telegrams and letters, of defendant, establish moral turpitude on his part in the negotiation and purchase of the claims, and in obtaining the $25,000 remitted by plaintiffs. In our judgment they show that defendant deliberately planned' and conspired with plaintiff Barton to wrongfully and fraudulently obtain from plaintiffs’ (exclusive of Barton) a large part of the said $25,000.
Earnest effort is made by counsel for defendant in error in their brief to convince this court that Blaisdell was an innocent party, acting in perfect good faith with plaintiffs; that he held an option on the claims for something like $700 or $800 in his own name and right, and was dealing at arm’s length with plaintiffs, as purchasers of the claims from himself as an individual. We thinks the contents of the above mentioned letters and telegrams destroy every vestigé of defend *392 ant’s contention in this behalf. They appear to conclusively establish the fact that the purchase was made for the common benefit of all the plaintiffs, Moyer, and defendant, and was so intended, understood and agreed, by and between them. The record further discloses that considerable skill and ingenuity were exercised on the part of defendant and Barton, to prevent plaintiffs (exclusive of Barton) from knowing or ascertaining the actual purchase price of these claims from the owners, and they were so successful in that regard that plaintiffs did not become aware that the real purchase price of the property was only $625, instead of $25,000, until sometime in August, 1909, over two years after plaintiffs had paid that sum tO' defendant.
It would serve no good purpose to attempt tO' analyze the evidence in detail in order to support the conclusions we have reached on the merits. We are satisfied that the record entirely supports the plaintiffs’ cause of action on the merits, and disproves defendant’s attempted defense.
Returning now to the proceedings in the District Court, it may be observed that the trial judge did not assume to decide the merits of the case, although he rendered a lengthy opinion containing his reasons for dismissing the action. In brief, he based his judgment of' dismissal entirely upon the ground that Barton participated in whatever fraud or deception the defendant may have perpetrated upon plaintiffs, and that Barton and defendant stood, in relation to each other, in pari delicto; that Barton, as a joint plaintiff, therefore could not recover from defendant; that plaintiffs were joint plaintiffs, and all must recover or none.; thus adopting the rigid common law rule as to joint plaintiffs in a law action. The court further held that neither ,§ 222, Mills’ Annotated Code, nor any other section thereof, was applicable to the case made ;by the record ; that the section applies only to cases wherein it appears from the record or at the trial that a plaintiff suing jointly has no interest in the recovery, in-which case he may be eliminated ’ and judgment go for his co-plaintiffs.
*393 In view of the rulings of the trial court in dismissing the action as stated, it becomes necessary to consider and determine whether or not its ruling in that behalf is supported by the law. The complaint on its face purports to- state but one cause of action, although divided into a number of paragraphs. It states in rather a concise manner the cause of action, and closes with a prayer for a money judgment, followed by one for general equitable relief. It shows that defendant holds in his possession $22,089.70, which rightfully and justly belongs to the plaintiffs. The facts there pleaded characterize the case as an action at law to recover money in defendant’s hands which rightfully belongs to plaintiffs. In form it is somewhat analogous to the common law action of indebitatus assumpsit for money had and received, the promise to repay being implied. The complaint contains no substantial averments calling for equitable intervention. Full relief can be had by a money judgment. True, the complaint contains a number of averments alleging fraud, false representations, and deceit, on the part of defendant in the obtaining of the $25,000, and- in making the purchase, but such averments are those ordinarily found in an action of law wherein a defendant is charged with moral turpitude in obtaining and retaining money justly belonging to plaintiffs, but they do hot change the character or nature of the action from one essentially legal to one in equity.
Under the reformed procedure under the codes the question here presented has received earnest and serious consideration from the various appellate courts of the country, as well as the standard law writers. Mr. Pomeroy, in his work on Code Remedies, fourth edition, has devoted unstinted space to a profound and scholarly discussion of changes made in the common law by the codes of the various states relative to the joint relations of plaintiffs and defendants in civil actions. Practically all the code states, including our own, have decided beyond debate that codes analogous to our own, which in terms abolish the distinction between forms of action, do not *394 abolish the principles underlying various actions, existing prior to the adoption of the code. Under this procedure, however, a party need only state facts upon which he relies to sustain his cause of action, and if issue be taken thereon he will be entitled to such a judgment as the facts established show him entitled to, regardless of the form of action which the pleadings might disclose. In the work last mentioned, the author, at page 167, after a lucid discussion of the changes wrought in the common law, by the codes, concerning joint rights and liabilities of plaintiffs and defendants, recapitulates his conclusions in six paragraphs, the third of which reads as follows:
“The new system has, in a very comprehensive form, established the doctrine of equity in regard to the choice and joinder of plaintiffs, and, by making no, exceptions or limitations, has applied this doctrine to all actions, whether legal or equitable;”
and at page 175 :
“That these provisions as to the parties plaintiff do enact the general doctrines which had prevailed in courts of equity, is admitted by both schools of interpretation; and that these equitable rules, thus embodied in a statutory form, do apply to all actions, and are not by any implied limitation restricted to equitable actions, is now, I think, declared by the courts in most of the states which have adopted the reformed procedure ;”
also at page 182:
“Has any change in these conceptions, and in the practical rules derived from them, been wrought by the codes of procedure? If the old distinction between joint legal rights and several rights is maintained; if the ancient notion of the common law, that twoi or more parties plaintiff in a legal action, brought upon a contract or upon the ownership of land or chattels, must hold a joint cause of action, is still preserved, *395 with all of its technical incidents; if it be considered that the reform legislation has confined its equitable doctrine as to parties to equitable actions alone, while it has left the doctrines regulating legal actions untouched — then no change has been wrought in the practical rules which determine the effect of a misjoinder of plaintiffs, as stated in the foregoing paragraph. Under this assumption, a misjoinder of plaintiffs in a legal action, brought upon a contract or upon property in lands or chattels, must now, as formerly, entail the consequence of a complete failure; while now, as formerly, a misjoinder of plaintiffs in an equity suit does not entail such a consequence; a judgment can be recovered by a portion of the plaintiffs, and the action be dismissed as to the residue. If, on the other hand, the system is to be accepted and acted upon in the spirit which designed it — if its requirements as to parties, which, as is universally conceded, enact the established doctrines of the equity courts, extend the one principle to all actions, legal as well as equitable — then there is a single rule governing all actions, and, so far as the dogmas of the common law are inconsistent therewith, they are necessarily abrogated, and form no part of the reformed American procedure. * * * Are these provisions of the code to be accepted in their entirety, with all their legitimate and necessary consequences, or are they to be limited and restricted by some exception grafted upon them by the courts, and‘are their consequences to be abridged and their operation to be confined to those actions which, under the former system, would have been called equitable? I have already, in the former portion of this section, stated, as the guiding principle of interpretation adopted by most of the courts, the doctrine thát the equitable rules of the codes were to be applied in all actions, whatever be their nature.”
The Supreme Court of Wisconsin seems to approve the author’s conclusions. Castle v. Madison, 113 Wis. 346, 89 N. W. 156. The citations I have hereinbefore made from Pom *396 eroy are taken from his discussion of the following code provisions which are found in most of the states, viz:
“All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this title.”
“Of the parties to the action, those who are united in interestrmust be joined as plaintiffs or defendants; but, if the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint.”
It seems dear from the author’s discussion of the code provisions concerning the question under consideration that if the plain and ordinary meaning be given to the language used by the; legislatures, the reformed procedure applies to legal and equitable actions alike. This construction abolishes the harsh common law rule that if an action at law be brought by two or more plaintiffs and one fails to establish a right of recovery, all his co-plaintiffs must likewise fail and be denied recovery, although it should clearly appear that his co-plaintiffs have suffered damage from the ■ defendant and are entitled to relief.
Mr. Bliss, in his work on Code Pleadings, third edition,, seems to agree generally with the views expressed by Mr. Pomeroy upon the construction that should be given to legislative acts adopting the reformed procedure relative to joint relations of parties to civil actions. Section ,24 reads in part as follows:
“At common law, in a joint action, if one of the plaintiffs fails to show his right of action, there can be no recovery by the others; hence the declaration must show a joint right, one that exists in favor of all the plaintiffs. But under the new system, the equity rule which permits ‘all persons having an interest in the subject of the action and the relief’ to be joined as plaintiffs, is adopted in terms, and judgment may be given in favor of one or more of the plaintiffs and against the others. In a case like the one just noted, if two or more ten *397 ants in common who derive title from the same person and by the same instrument, seek to' repudiate the purchase or recover damages upon the ground of fraudulent representations which induce it, and so state the facts that they apply to each purchaser, under these provisions of the statute it would seem that they should be permitted to join in the action; and if it should appear that one or more of the plaintiffs knew the facts and did not rely upon the representations, the judgment might be against him or them, although in favor of the others. But this question has not been authoritatively decided.”
While the last phrase of the quotation .indicates that his expressed views are not entirely settled by the authorities, many cases, some of which I will hereinafter cite, seem to be in full accord with such views.
Section 74 reads:
“It shocks the prejudices of common law pleaders to speak of a union of plaintiffs where there is not a joint interest; and, such is the effect of a legal education, and long habits of thinking, that, what seems so' natural in a proceeding to prevent a common injury, or to set aside, a- sale' for the benefit of common creditors, or to subject to their respective claims the assets of an estate, seems almost impossible, in case a sum of money is sought to be recovered in which sundry persons have a several, and perháps unequal, interest.
“But it has come to be generally conceded that the rule is universal in its application, as it is in its terms; and if two or more are interested in the subject of the action, and in the relief sought, they may unite as plaintiffs for the recovery of money, or of specific real or personal property. The objection to the union springs from the difficulty in common law actions in adjusting the rights of the plaintiffs as between themselves. In such actions this cannot be done; but the code removes the objection by adopting another rule of equity practice, to-wit:. ‘Judgment may be given for or against one *398 or more of several plaintiffs, and for or against- one or more of several defendants; and it may determine the ultimate rights of the parties on each side as between themselves; and it may grant to a defendant any affirmative relief to which he may be entitled.’ Notwithstanding this rule, it is said, and with apparent reason, that such adjustment is difficult, and sometimes impossible, in jury trials. But the suggestion supposes that the several rights will always be ascertained by the verdict. While in many cases this may be done, and must be done when the extent of the liability depends upon the amount of each of the several claims, yet in other cases, the verdict need only find the fact of the defendant’s liability, and its amount, leaving the adjustment among the plaintiffs to be made by themselves after judgment, or by the court before it is entered.”
In section 61 the author says:
“The statutory provisions in regard to the joinder of plaintiffs are (x) permissive and (2) imperative. The following is the first: ‘All persons having an interest in the subject of the action and in obtaining the relief demanded, may join as plaintiffs, except as otherwise provided,’ etc. This provision is followed by (the second) to-wit, that ‘the parties who are united in interest must be joined as plaintiffs or defendants; but, if the consent of any one who- should have been joined as plaintiff cannot'be obtained, he may be made defendant, the reason therefor being stated in the complaint’ (or petition). These two provisions are familiar to- equity pleaders. But though drawn from equity practice, it must not be hence inferred that they apply only to actions for equitable relief; for, as we have seen, and shall all along see, the chief changes made by the code consist in applying to pleadings in all actions, rules otherwise recognized in courts of equity.”
Section 72 reads in part as follows:
“It should' be premised that the supposed innovations by the code are rules of equity procedure. * * * but the *399 statute-does not confine them to any class of actions; they are general in their 'character, and are applied to- all actions; there is now but one form of action and mere formal distinctions between those heretofore called legal and those called equitable are abolished. Bearing this in mind, the conclusion is inevitable that these rules apply as well to one class of actions as to- the other, unless from their nature such application cannot be made.”
Again at section 73, speaking of permissive joinder, the author says:
“There is a distinction between the rule requiring persons united in interest to be joined and the one just given, as the latter does not contemplate a joint interest, nor is the union made imperative. In the cases where it has been sanctioned the interest is called a common one — that is, certain persons are interested in that concerning which the wrong has been done, and will all be benefited by the relief which is sought; they have a common interest, .and may join in seeking relief. Thus, the owners of distinct parcels of property may be interested in setting aside a fraudulent conveyance; and tenants in common, though holding in severalty, may be interested in preventing a trespass. In either case they may unite in an action, notwithstanding the technical common law rule confining the union to those having a joint interest.”.
In speaking of the joint rights of joint obligees, it is said in section 62:
“As, in legal progress, the individual interests of each obligee came to be recognized, the notion of a joint right became but a fiction. As a fact, it ceased, and should have been treated as merged into — as having become but a right in common — analogous to tenants in common in the realty.”
See also: Loomis et al. v. Brown et al., 16 Barb. (N. Y.) 325; Seymour v. Carpenter, 51 Wis. 413, 8 N. W. 251; Schiifer, Admr. et al. v. City of Eau Claire, 51 Wis. 38-5, 8 N. W. 253; Goodnight v. Goar, 30 Ind. 418; Meldrim et al v. The United States, 7 Court of Claims 595; Earle v. Burch, 21 *400 Neb. 702, 33 N. W. 254; Bestor v. Barker, 106 Ala. 240, 17 So. 389.
Section ’222, Mills’ Annotated Code, reads as follows:
“Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may, when the justice of the case requires, it, determine the ultimate rights of the parties on each side as between themselves,”
Indiana has a code section identical with ours, and the appellate courts of that state have time and again construed the same. Nichodemus v. Simons et al., 121 Ind. 564, 23 N. E. 521, was an action for money had and received, brought by two plaintiffs against defendant. The complaint on its face alleged a joint cause of action, and it appeared at the trial that upon the facts alleged in the complaint some of the plaintiffs, but not all, were entitled to recover. The court held that judgment could be rendered for the- plaintiff entitled to recover, although the remaining plaintiff failed to prove right of recovery. The court said :
“In oür code of practice is found the following statute: (quoting statute identical with above section). This is a very liberal statute, and is in accord with the spirit of the code of which it is a part. (Section 568, R. S. 1881.)
“It has been often said by this court that the code of practice was formulated and adopted with the view of simplifying the rules of practice in our courts, and doing away with all technicalities, the only effect of which was to obstruct the administration of justice in the trial of causes. Keeping in mind the language of the said section of the statute, and the spirit of the code in which we find it, we can but come to the conclusion that it was the intention of the law-giving power by the enactment of said section, in all actions having more than one party plaintiff or more than one party defendant, to confer upon the courts power to brush aside all technical objections which disregard what is substantive, and *401 depend upon mere form, and to render judgment according to the rights of the parties as disclosed by the evidence and embraced within the subject-matter covered by the issues tendered.
“If, therefore,*two or more persons bring a joint action, alleging a joint cause of action, and it turns out upon the trial that upon the facts alleged in the complaint some, but not all, of the plaintiffs are entitled to recover, the court or jury, as the case may be, will so find, and judgment will be rendered accordingly. And where a number of defendants are sued, and after the evidence is heard it appears that there ought to be a recovery as to some but not all of the defendants, the court or jury may so find, and judgment will be thus rendered.
“This has been the construction given to the provisions of the said statute, when brought in question before this .court, without exception” (citing many Indiana cases).
To the same effect: Rust et al. v. Thompson et al., x 12 Ind. 158, 13 N. E. 665; Hamilton et al. v. Browning et al., 94 Ind. 242; L. N. A. & C. R. Co. v. Lange, et al., 13 Ind. App. 337, 41 N. E. 609; Ward et al. v. Gibbs et al., 10 Tex. Civ. App. 287, 30 S. W. 1125; Simar v. Canaday, 53 N. Y. 298, 13 Am. Rep. 523.
From Enc. of PI. & Pr., page 539, we quote the following:
“In actions upon implied contracts the right of action follows the consideration.”
“Where a promise is implied, the action must follow the consideration, and be joint or several accordingly; but where the action arises on an express promise, if that be joint, the action must be. Lee v. Gibbons, 14 S. & R. (Pa.) 105.”
In the case at bar there can be no question, under the evidence, that all the plaintiffs, Moyer, and defendant, joined in a common venture to purchase the mining claims for the common benefit of all, and that plaintiffs entrusted defendant with' the authority to purchase the claims at the best price obtainable, which defendant represented to be $25,900; that a *402 highly fiduciary relationship existed between plaintiffs (exclusive of Barton) and Moyer on the one hand, and defendant on the other. At all times during the negotiation and purchase the respective parties were separated by two thousand miles of territory, and for a long time prior to- the purchase plaintiffs had been in close business- relations with defendant, who represented their interests in certain mining operations in Colorado. They therefore knew him well, and presumably had perfect faith and confidence in him. It is unreasonable to presume that plaintiffs would have entrusted a stranger, or one in whom they reposed no confidence, with the large sum of $25,000, with full authority to dispose of the same in the purchase oí said five claims. Plaintiffs relied exclusively upon the honor and judgment of defendant to fix the value of such claims.. Under the circumstances, if defendant purchased the claims for $625, instead of $25,000, it is too clear for argument that the difference between the two sums rightfully belonged to- plaintiffs, and defendant held same in trust for them. It is also clear that upon discovery of the deception practiced upon them plaintiffs could have repudiated the entire transaction, placed defendant in statu quo, and sued in tort to recover their damages; or they could have waived the tort, confirmed defendant’s acts, and brought an action in the nature of indebitatus assumpsit for money had and received, to recover the excess in defendant’s hands. The complaint indicates that they pursued the latter course and adopted defendant’s acts in purchasing the claims, received the title thereto, and by this action seek to obtain the balance in his hands which .justly belongs to them.
In Meldrim v. The United States, supra, two- plaintiffs, joint owners of property, brought 'an action to recover the value of certain cotton which had been captured by the government. At the trial one of the plaintiffs failed to show his loyalty, which prevented him from recovering. The other did so, and judgment was rendered in his favor for the interest he owned in the property. The court said:
*403 “If at the common law, under the principle announced in Fain’s Case, joint owners of property can maintain separate suits when their interest is several, much more ought they to be able to do so in this court, whose jurisdiction is purely statutory and limited by no technical forms or rules of pleading. Its object is, in this class of cases, to determine the right of every claimant under the statute to the proceeds of his property seized, and to render judgment accordingly. And in a case like this, when the interest is not equal but clearly severable, the court will ever be cautious not to allow the crime of one joint owner to work a forfeiture of the rights of the other when he is innocent and within the terms of the statute.”
So it may be said in the case at bar. We see.no- good reason under the liberal provisions of the code, why the honest plaintiffs may not recover against the defendant the money belonging to- them and in defendant’s hands, if they prove-such- right under the allegations of the pleadings, although the evidence shows that the' plaintiff Barton was not entitled to recover, by reason of participation in the false representations and pretenses made to his co-plaintiffs. The plaintiffs (exclusive of Barton) had a common interest in the fund sought to be recovered. The record does not clearly show whether or not all the plaintiffs, Moyer, and defendant, who signed the original notes for $25,000, were each to- be liable for one-ninth of the total, nor does it show just what part of the total sum each paid. The no-tes on their face are joint and several and bind each and all to the full amount thereof, but it might be that, as between themselves and defendant, they contributed different amounts to the sum total. The record shows that defendant Blaisdell, subsequent to signing the notes, was. released from liability on some of them, because of his payment of a part thereof, it being stated that such payments were his proportionate share of the same. An inference might be drawn from this that there was an understanding between the signers that each might secure his release from the notes *404 by paying such part thereof as his share in the enterprise represented. Under said § 222, and other authorities cited, we do not think this important, as it appears to be well settled by such authorities that if all the plaintiffs under the pleadings show themselves entitled to an interest in the common fund sued for, the court at the trial may and should adjust and determine their respective interests therein and give judgment accordingly.
In Jones v. Perot, 19 Colo. 141, 34 Pac. 728, the court held the lower court to have committed error in sustaining a demurrer to the complaint, using this language:
“The court erred in sustaining the demurrer to this pleading. If the facts alleged are true, and they must be taken as true, as against the demurrer, the plaintiff Sutton had become jointly liable with defendant Cooper upon the agreement which constitutes the basis of the first cause of action as pleaded. The defense should have been permitted to stand, to the end that in this action the ultimate rights of the parties may be determined as between themselves, as provided by section 222 of the Civil Code.”
It would appear that this decision recognizes the power of the trial court to determine the respective rights or interests of the parties as between themselves respectively, whether such parties have equal or different interests in the subject matter of the action.
Extended, discussion on behalf of both parties has been indulged in in the briefs, concerning the character of this action and the respective rights of the parties under the common law and code provisions. We have already decided that this is essentially a law action upon an implied contract, and analogous to what was known at common law as an action in indebitatus assumpsit for money had and received.
In Byxbie et al. v. Wood, 24 N. Y. 607, being an action wherein plaintiffs sued defendant to recover money alleged to have been obtained by false and fraudulent representations *405 and statements, the facts of the case disclosed a situation quite similar to the one found in 'the case at bar. The court said: -
“We are thus brought to- the consideration of the chief ground taken on the part of the defendant, which is, that the cause of action, as laid in the complaint, was founded on fraud and deceit, and that such an action was for a tort of such a nature that the cause of action is not assignable. *1 * * The facts, as found by the referees are, that, by false representations and the alteration of bills and vouchers, the defendant himself received from Marvine large sums of money to which he was not entitled; and they have found that the plaintiffs are entitled to recover, not for any fraud, but for the money which the defendant had so received, and which, being so received, he had no right to retain. This state of facts does not necessarily require an action to be brought’ for the tort, even if it allows one to be so brought. Such facts always raised, in law, the implied promise which was the contract-cause of action in indebitatus assumpsit for money had and received. Having money that rightfully belongs to another, creates a debt; and wherever a debt exists without an express promise to pay, the law implies a promise; and the action always sounds in contract.
“Under the ‘code this implied promise is treated as a fiction, and the facts (out of which the prior law raised the promise) are to be stated without any designation of a, form of action; and the law gives such judgment as, being asked for, is appropriate to the facts. * * * The complaint says that Wood made false and fraudulent representations to Marvine about the moneys paid for joint account, and ‘by means of such false representations fraudulently and deceitfully obtained’ property, etc., from Marvine; and the plaintiffs (as assignees of Marvine) ‘therefore demand judgment against the defendant'for the sum of $6,559.62, and interest from October, 1848.’ It would hardly seem that this is a complaint for a mere naked tort in an action claiming .damages for the wrong. And unless it be so', necessarily and tin- *406 avoidably, the ends of substantial justice would require us to disregard the words that charge a wrong.
“Yet even this seems not now a necessary ground for sustaining this judgment. What valid objection is there to treating these words (‘fraudulently and by deceit’) as mere inducement, containing a statement of the facts which show that Marvine’s. payment was not a voluntary one with knowledge of the facts, and that, therefore, he was entitled to sue to- recover back the money; and thus anticipating a defense?
“The defendant’s counsel claims that the findings of fact by the referee do not sustain the judgment, because they have not found the fraud, which is alleged in the complaint. It is quite true that they have not found the fact of fraud; but as we hold that the action is sustainable without there having been any fraud, and merely as an action for money, which the defendant has no right to retain, the failure to find fraud is no objection to the validity of the judgment, and it is to be affirmed as not being an action for the fraud ”
In Denver Tramway Co. v. Cloud, 6 Colo. App. 445, 40 Pac. 779, Judge Bissell, in discussing the character of the action, as to whether it was an action in assumpsit or one in tort, spoke as follows:
“Under our system of pleading we have but one form of action, and when the pleader has stated the facts out of which his cause of action arises and supports that cause by proper proof, he may recover for the tort, even though he has stated facts which at the common law would of necessity make his action one in assumpsit and not in case. In other words, we are not willing to admit the existence of those technical distinctions which at the common law determined what action was brought and what relief the plaintiff might have.”
We see no reason why, in Judge Bissell’s illustration, the converse of the rule should not prevail, that is to say, plaintiff might recover in indebitatus assumpsit for money had and received even though he had pleaded facts which at common *407 law would of necessity have made his action one in tort. See also The Union Bank v. Mott, 27 N. Y. 633.
As to- whether or not an action in the nature of one. for money had and received is the proper kind of action to recover money from defendant under circumstances similar to those disclosed by this record, the general trend of the authorities supports the affirmative. The syllabus in Mumford v. Wright, 12 Colo. App. 214, 55 Pac. 744, reads in part as follows:
“Where a' party receives the money of another and applies it to his own use, the law implies a promise to repay, and it is not necessary to allege such implied promise in an action to recover such money.”
“Where money was paid into court and the clerk paid it out to a party who- claimed it but who was not entitled to receive it an action could be maintained against the party who received the money by the party rightfully entitled to it, as for money had and received.”
To the same effect Brown’s Estate v. Stair, 25 Colo. App. 140, 136 Pac. 1003. This last cited case is in harmony with the authorities adopting the affirmative. The question, with some of its phases, is discussed at some length by Judge King, who-, with his customary logic and clearness, supports the opinion of the court by cogent" reasoning and by citation of reputable authority. See also The Ph. Zang Brewing Co. v. Bernheim et al., 7 Colo. App. 528, 44 Pac. 380.
It is contended by defendant that all negotiations for the purchase of the five claims, the actual purchase thereof, as well as the securing of the $25,000 by him, took place between himself and plaintiff Barton alone; that defendant never had any dealings either in person or by letter with the other plaintiffs, therefore they 'had no cause of action against him. This may be literally true as to the facts stated, but it in no way helps defendant in his defense. The conclusion is false. The record shows that he used Barton as- an instrument and worked in conjunction with him to get the other plaintiffs to join with himself and Barton in the purchase of the claims. *408 The record also shows that in the correspondence between defendant and' Barton the former indited certain letters to the latter, with instructions to show them to the other plaintiffs; while in others he instructed Barton to' use his own judgment as to whether or not he would show them. It further shows that the greater number of those letters were shown by Barton to the other plaintiffs, and were so used by him to induce them to engage in the venture. In law such actions by defendant and Barton established the contractual relations between defendant and the other plaintiffs with as much validity and binding force as would have been the case had defendant corresponded, concerning the matters, directly with the plaintiffs themselves. The contention of defendant, therefore, is not tenable.
The facts disclosed by the record show a situation that is frequently met with in common business affairs. The unwary are often importuned! by unscrupulous persons to invest money in enterprises remote from their domicile, and of which they know nothing, but are, however, induced, and sometimes enthused, by highly colored prospects of fabulous profits, to not only make the investment, but to impose perfect confidence and trust in a skillful and persuasive promoter. The law is well settled that when one person induces another to join with ‘him in a purchase of property under a plain understanding that such one is to secure the title at a stated price, and it turns out afterwards that the one intrusted in making the purchase secures it at a less price, he must account in law to' the other for any excess he has procured from his co-purchaser over the actüal price paid. The form of the action brought is of no moment if the facts alleged, and the proofs made, show that the one making the purchase retains such excess in his hands. It makes no difference in such case whether such one made false or fraudulent representations concerning the price paid, or remained silent and permitted his co-purchaser to believe that the price represented to have been paid was the true purchase price. A few cited cases in support of the rule will be *409 sufficient. Mayo et al. v. Wahlgreen, 9 Colo. App, 506, 50 Pac. 40; Teachout v. Van Hoesen, 76 Iowa 113, 40 N. W. 96, 1 L. R. A. 664, 14 Am. St. Rep. 206; Bergeron v. Miles, 88 Wis. 397, 60 N. W. 783, 43 Am. St. Rep. 911; Davenport v. Buchanan, 6 S. D. 376, 61 N. W. 47; Kermah v. Huston, 15 Wash. 275, 46 Pac. 236; King v. White, 119 Ala. 429, 24 South 710. The facts of the last case cited are quite similar to those of the case at bar.
Under the evidence disclosed by the record, plaintiff Barton was not entitled to recover, by reason of his participation in the false representations and false pretenses practiced upon his co-plaintiffs in securing from them the money sued for. Under such circumstances the law will extend him no relief, but will leave him in the condition that it finds him; therefore the judgment of the trial court in favor of defendant as against him was properly rendered, but as to all his co-plaintiffs the finding and judgment against them in favor of defendant was erroneous. The judgment should have been for such co-plaintiffs.
We will now consider the action of the trial court in dissolving the attachment, based upon the issue formed by the traverse to the affidavit. Section 113, Mills’ Annotated Code, provides among other things that before the time for answering expires, defendant may, upon motion and reasonable notice to plaintiff, have the attachment discharged “on the ground that the writ was improperly issued, for any reasons appearing upon the face of the papers and proceedings in the action.” Bearing this section in mind, we call attention to two entries in the transcript of record, viz:
(1) November 8, 1909, an order, to the effect that the court, after hearing a motion of defendant to discharge the attachment, granted the same.
(2) On September 26, 1910, another order, to the effect that, after hearing a motion of defendant to dissolve the attachment, the same was granted. Just following this entry, and on the same day, appears another order to the effect that *410 defendant may have ten days in which to “traverse herein as he shall be advised.”
After a careful search of the transcript in this'case, as well as that of the intervention, we fail to find any motion whatever for discharge or dissolution of the attachment, or any traverse of the affidavit. However, we consider this of no importance, as the record shows that at the beginning of the trial of the main case, on February 17, 1911, it was stipulated by counsel for both parties that the issues in the main case, as. well as those formed by the traverse of the affidavit, should be tried at the same time. This clearly indicates that the court and all the parties must have ignored both of the orders above cited, and that defendant waived any rights thereunder, and was content to test the validity of the attachment proceeding by trying the issue made by the traverse. Section 96, Mills’ Annotated Code, among other things provides that “If the defendant fail to traverse the plaintiff’s affidavit, the attachment shall be deemed sustained.” Again we say that, both parties having stipulated that the evidence should be taken upon the traverse issue at the time of the hearing upon the main case, we will presume the traverse was. filed. With this explanation we will proceed.
The trial court in its findings and judgment dissolved the attachment. Was this error? The affidavit among other things alleged as a ground of attachment that by false representations, false pretenses, and fraudulent conduct, defendant procured the money of plaintiffs in the manner stated. This alleged ground of attachment is substantially in the same words as those found in subdivision 12, section 92 of the code. Assuming then that the traverse was filed, we must also assume that this, ground of attachment was therein denied. Therefore, having hereinbefore reached the conclusion that this is an action at law as for money had and received upon an implied contract to recover money in the possession of defendant which rightfully belongs to plaintiffs, and having also decided that the money sued for was obtained from plaintiffs *411 by and through false representations, false pretenses, and fraudulent conduct, of the defendant, it follows that the lower court committed reversible error in finding the issues upon the traverse in favor of defendant.
Section 91 of the code provides among other things that “The plaintiffs at the time of issuing the summons or filing the complaint in an action on contract, expressed or implied, or at any time afterward, before judgment, may have the property of the defendant not exempt from execution attached as security for any judgment that may be recovered,” etc. The right to sue out a writ of attachment upon an implied contract, under statutes similar to ours, is sustained at page 442, 4th.Cyc., many authorities being cited in support thereof.
Numerous other questions are raised and ably discussed by counsel for defendant in error, both upon matters pertaining to the main issues as well as those of the traverse, all of which have received careful consideration, but in view of the conclusions we have reached on the various questions determined, we discover nothing therein that causes us to doubt our position.
Inasmuch as the proofs tending to establish plaintiffs’ cause of action consist entirely of documentary evidence, this court is warranted in passing upon the sufficiency thereof, irrespective of any findings or conclusions of the trial judge upon the-issues. Therefore, having reached the conclusion that Barton’s co-plaintiffs established their cause of -action and right of recovery against defendant, we feel justified by the record in terminating this litigation now. The judgment of the district court will therefore be reversed, except as to plaintiff Barton, with instructions to hear evidence as to what part of the $25,000 each of the plaintiffs (exclusive of Barton) contributed thereto, and as to what expense was incurred by defendant in and about his journey from Colorado -to Nevada and return, while making the examination and negotiating for the purchase of said claims, including any outlay made by him which was reasonably necessary in negotiating *412 and. consummating the purchase; to. which sum should be: added the amount which may be found by the court to have been paid by defendant for the five claims — not less than $625 (admitted in the pleadings), — and the further sum of $2,285.30, admitted by plaintiffs to- have been paid by defendant as part payment upon-the said $25,000; which total so ascertained should be deducted from the $25,000, and judgment for the balance entered for plaintiffs (exclusive of Barton), with legal interest.

Reversed with instructions.