HARDEN FARMS, Inc., a California Corporation, Plaintiff,

v.

Salvatore F. AMATO, Anthony Dodero, and Salvatore F. Amato and Anthony Dodero, doing business as Amato and Dodero, a Copartnership, Defendants.

Civ. A. No. 5845.

United States District Court
D. Colorado.

March 31, 1958.

Hodges, Silverstein, Hodges & Harrington, William V. Hodges, Jr., Denver, Colo., for plaintiff.

King & Hafertepen, Harold Taft King, Denver, Colo., for defendant Salvatore F. Amato.

KNOUS, Chief Judge.

Heretofore herein, at the behest of the plaintiff, writ of attachment was issued against certain property of the defendant Amato. He has traversed the affidavit of attachment filed by plaintiff and the matter now stands upon the issues raised by such traverse.

The evidence of the plaintiff at the hearing disclosed that pursuant to an agreement between the parties relating to the purchase and feeding of cattle, the plaintiff deposited in excess of $20,-000 in a checking account in its name in a Denver bank. The defendant Amato, as agent for the plaintiff, was authorized to sign checks on such account and thereafter did sign checks and drew from said account an amount in excess of $20,000 which he wrongfully converted to his own personal uses and purposes without the permission or authorization of the plaintiff. Contending that the showing of the plaintiff was insufficient to establish the validity of the attachment, the defendant offered no evidence.

Both parties agree that the law of Colorado is controlling herein. Rule 102, C.R.C.P., provides that in an action on contract, express, or implied, for certain specified causes incorporated in subdivision (b) of said rule, a writ of attachment may issue in behalf of the plaintiff. As one of the causes for attachment, Rule 102(b) provides:

"(12) That the defendant fraudulently contracted the debt, or fraudulently incurred the liability respecting which the suit is brought, or by false representation or false pretenses or by any fraudulent con-

duct, procured money or property of the plaintiff."

Omitting the first phrase, the affidavit of attachment herein follows the precise language of said subdivision (12) supra, as grounds for the attachment herein.

Amato contends that since the evidence shows that in the first instance he lawfully and without fraud came into the right of access to these funds, his subsequent wrongful appropriation of them does not bring this case within the purview of the foregoing subdivision of Rule 102.

On a national level there seems to be some conflict in the views of the courts with respect to this question. Illustratively, in the note appearing in 39 A.L. R.2d 1283, it is said:

"§ 9. *Wrongful Appropriation of Goods or Funds Lawfully Obtained.*

"[a] *View that Debt is Not Within Statute.*

"To the question whether the debt which arises from the wrongful appropriation of goods or funds lawfully obtained is within the purview of a statute dealing with attachment on the ground of a fraudulently incurred liability or fraudulently contracted debt, the courts in some jurisdictions have given a negative answer."

Cited in support of this statement is the Colorado case of Goss v. Board of Com'rs of Boulder County, 4 Colo. 468, together with decisions from Missouri, Ohio and Washington.

Following a discussion of those cases, the A.L.R. note on page 1285, continues:

"[b] *View that Debt is Within Statute.*

"The cases discussed immediately above are opposed by decisions of the courts in an equal number of jurisdictions in which it has been held that a debt or liability arising as a consequence of the wrongful appropriation of goods or funds lawfully obtained is one which, for purposes of the attachment statutes, has been fraudulently contracted or incurred.

Decisions from Maryland, Minnesota, Pennsylvania and West Virginia are cited as supporting this view.

Decisions in the latter category are grounded upon the proposition, relied upon by the plaintiff herein, that where an agent misappropriates money belonging to his principal, an implied contract under the principles of a quasi contract is created to repay the amounts by which the defendant was unjustly enriched. In such a situation, these courts have said that the fact that the money was obtained lawfully makes no difference since plaintiff's cause of action arose when the defendant appropriated the property and it could not be said that the deliberate taking of another's funds held for a particular purpose and applying them for an entirely different purpose is not a fraudulent act within the meaning of the attachment statute.

The defendant, of course, contends that the Colorado case of Goss v. Board of Com'rs of Boulder County, supra, is decisive in this jurisdiction and conclusively establishes the validity of his contention. Counsel for defendant points to the placement given this decision in the foregoing annotation as substantiating defendant's position.

Certain isolated language of the court in Goss v. Board of Com'rs of Boulder County, supra, might seem to give some support to defendant's contention and also possibly justify the treatment accorded the case in the A.L.R. note, but when the whole opinion is considered it seems apparent to me that the decision is without controlling effect in the proceeding at bar. In the Goss case, the County Commissioners of Boulder County sought to recover from a clerk employed by the County Treasurer certain moneys which the clerk had converted to his own use and it was held that in such an action an attachment could not issue against the clerk on the ground that his debt to the county was fraudulently contracted. As I read the opin-

ion, this decision was clearly premised upon the principle that under the statutes of Colorado there was no such privity between the county or the public and the clerk, as to create an implied contract between them in the face of an express contract between the Treasurer and the public. Thus, the factual situation in that case is in direct opposition to the one herein attending where the absconding defendant was clearly and admittedly the agent of the principal whose money was converted. In other words, it is my belief that if in Goss there had been contractual privity between the clerk involved and the county, a different conclusion would have been reached by the Court.

In Piedmont Grocery Co. v. Hawkins, 83 W.Va. 180, 98 S.E. 152, 154, 4 A.L.R. 828, 831, the Court discusses the Goss case and points out that it was largely based upon a different principle than the proposition involved in the case of misappropriation by an agent of the plaintiff, which is the situation in the proceeding at bar. Concerning the Goss case, the West Virginia Court said:

"In that case the party from whom the money was sought to be recovered was not a direct agent of the plaintiff, but was an employé of the treasurer of the plaintiff, and the court held that the extent of the plaintiff's rights were fixed by its contract with the treasurer, and recovery on the treasurer's bond was the appropriate remedy for it to pursue."

and then went on to say:

"In the case of Downs v. Baltimore City, 111 Md. 674, 76 A. 861, 41 L.R.A.,N.S., 255, it is held that the wrongful conversion of funds by an officer constitutes fraudulently contracting an obligation which will sustain an attachment, and the reasoning of the court in that case seems to us to be entirely sound. Many cases are cited in support of the text at page 78 of 6 Cor.Jur., holding that attachment lies for goods or money embezzled or stolen, or obtained by other species of fraud."

The case of Reyer v. Blaisdell, 26 Colo.App. 387, 143 P. 385, while not directly in point herein by reason of the fact that the fraud there involved preceded the obtaining of the money, nevertheless establishes that in Colorado misappropriation by an agent of a principal's money in a fraudulent way results in a breach of duty subjecting the agent to an action either *ex delicto* or *assumpsit*. In such a case the party injured may elect to sue upon the implied contract and waive the action *ex delicto*. The principle announced in Reyer v. Blaisdell, supra, has been reaffirmed in the subsequent cases of Boyle v. Poor, 62 Colo. 337, 163 P. 967, and Colorado National Bank of Denver v. Simpson, 109 Colo. 53, 121 P.2d 663.

My study thus convinces me that there are no decisions of any of the appellate courts of Colorado directly conclusive of the question here in consideration; but the inferences to be drawn from Reyer v. Blaisdell, supra, as well as from Goss v. Board of Com'rs of Boulder County, itself, convince me that Colorado courts would follow the general rule as stated in 4 American Jurisprudence, page 624, which I believe to be sound and reasonable, and which reads as follows:

"§ 110. *Claims Arising from Embezzlement, Theft, or Conversion.*— In those jurisdictions wherein the statute provides for the issuance of a writ of attachment in actions for debt arising from contracts, express or implied, the courts have generally held that where money or goods have been embezzled, stolen, or converted, the injured person may waive the tort and sue on an implied contract, and that he is, accordingly, entitled to a writ of attachment in such action."

In the opinion of the Court the findings of fact and conclusions of law expressed in this memorandum opinion are sufficient to meet the requirements of

Rule 52(a), Fed.Rules Civ.Proc. 28 U.
S.C.A., and the preparation and filing of
formal findings of fact and conclusions
of law may be dispensed with. Accordingly, it is ordered and adjudged that
defendant's traverse of plaintiff's affidavit of attachment be, and the same
hereby is denied and dismissed.