## TABOR *v.* BIG PITTSBURG CONSOLIDATED SILVER MINING CO.*

*(Circuit Court, D. Colorado. January 3, 1883.)*

**ATTACHMENT—DOES NOT LIE IN ACTIONS OF TRESPASS.**

> Under the statute of Colorado an attachment is not allowed in actions of trespass to mines, even though the plaintiff elect to waive the trespass and sue as for money had and received by defendant to his use. The implied promise in such case is a pure fiction of the law, invented to support the old action of *assumpsit*. Taking ore from a mine without the consent of the owner is a trespass in which none of the elements of a contract can be found

On Motion to Quash Attachment.

*L. C. Rockwell,* for plaintiff.

*S. P. Rose,* for defendant.

HALLETT, D. J. The substance of the complaint is that the defendant has entered the Matchless mine in Lake county, which is owned by plaintiff, and has taken therefrom ore of the value of $109,388, and has sold and converted the same to its own use. The fourth paragraph of the complaint is as follows:

"That plaintiff now elects to waive the trespass so as aforesaid committed by defendant in mining and getting said ore, dirt, and mineral-bearing rock from said Matchless lode, mine, and premises, and sues defendant, in an action for money had and received for plaintiff's use, for the money received by defendant for said ore, dirt, and mineral-bearing rock so as aforesaid dug, mined, and got out of said Matchless lode of defendant, and by it sold and converted into money and money's worth."

Suit was brought in the district court of Lake county on the first day of August, 1881, and on the fifth day of the same month the attachment was sued out against which the present motion is directed. The motion was, however, filed in the district court of Lake county, August 13, 1881, and within the time limited for answer, as provided in section 113 of the Code of the state. The motion was not decided in the state court, and the cause having been removed into this court very recently, it remains for consideration here. The statute of Colorado gives the writ of attachment in actions on contracts express or implied, (Code, § 91,) and the question is whether this action is of that character. Taking the ore from the Matchless mine without the consent of the owner was certainly a trespass in which no element of a contract can be found. But it is said that the plaintiff may waive the trespass and sue for the proceeds of the ore as money due on contract. And that proposition is everywhere ad-

*From the Colorado Law Reporter.

mitted.    Indeed, some courts go further, and say that an action for the value of the property tortiously taken, as for money had and received, may be maintained when the property has not been converted into money.    *Norden* v. *Jones*, 33 Wis. 600.    Compare *Moses* v. *Arnold*, 43 Iowa, 187.

The promise to pay the value of the property or the money received for it in such cases, which gives to the transaction the quality of a contract, is, however, a pure fiction supplied by law to support the action.    As it was invented to support the action of *assumpsit* in the old procedure, and the forms of action have been abolished, a learned author suggests very forcibly that it should not be recognized in modern practice.    Bliss, Code Pl. §§ 128, 152, *et seq.*

And there are reasons for believing that the statute governing attachments refers only to contracts existing within the intention of the parties making them.    The conduct of parties is often such as to give form to an agreement or understanding which they do not express in words, but fully intend to carry out; as where one takes an article of merchandise from a store in which he usually deals, with the assent of the owner, but without words, the intention to buy the article at the current price is fully understood, although not expressed. The statute may be taken to refer to such implied contracts, more than to others, which were invented to support a form of action in the common-law procedure.

Plaintiff's counsel presented many cases to show that an action *ex contractu* may be brought for property tortiously taken; but none of them affirm the right to an attachment for the same cause, except in states where the acts in terms extend to torts.    *Graves* v. *Strozier*, 37 Ga. 32; *Davidson* v. *Owens*, 5 Minn. 50.

If the acts of the several states allowing the writ of attachment in actions on contract have been held to embrace cases which really sound in tort, like the one at bar, there should be something in the reports on the subject.    But no case has been cited to support that view; and the court has found but one case of an attachment maintained upon a contract which may be said to be a clear implication of law, and that one may be assigned to the class of tacit agreements already mentioned, which, if not expressed in words, are evincible from the acts of the parties, and stand fully with their intention.    In that case money was advanced on an agreement to construct certain machinery, which agreement was not performed, and it was thought that the money so advanced might be recovered by attachment, under a statute which allowed the writ in an action "upon a contract

expressed or implied for the direct payment of money." *Peat Fuel Co.* v. *Tuck*, 53 Cal. 304.

In the same state it was held that attachment would not lie for money lost at play by plaintiff's clerk. *Babcock* v. *Briggs*, 52 Cal. 502.

If, however, the meaning of the attachment act on this point is doubtful, it is believed that the course of legislation on the subject will afford the means of resolving the doubt. In 1872 the legislature of the territory, in an act "defining further causes for attachment," gave the writ in actions "to recover damages for trespass on any lode or mining property." Ninth Sess. Territorial Assembly, 116. In 1876 amendments were made in the attachment act, in the course of which the legislature declared that nothing therein should affect the prior act of 1872. Eleventh Sess. Territorial Assembly, 27. In 1877, after admission of the state, the same act was inserted in the Code as section 119, and a part of the statute now in force relating to attachments. Thus it appears that, under the former act of the territory governing attachments, (Rev. St. 1868, p. 52,) it was thought necessary to pass a special act giving the writ in actions to recover the value of ore taken from a mine; and after five years' experience of the act so passed, it was retained in the laws of the state in connection with the present act. In 1879 the legislature of the state repealed it unconditionally, (Second Sess. 230,) thus withdrawing the process of attachment from cases of this kind after it had been in use upwards of seven years. By this course of proceeding, the intention of the legislative assembly respecting the process of attachment in actions for trespass to mines was sufficiently expressed, and there is now no room for doubt in the matter.

It is true that the act embraced all injuries to mines, and was, therefore, more comprehensive than the present action. But this case is certainly within the terms. It is, in substance, an action of trespass, and will remain such, although called by another name. In practice the act of 1872 was resorted to, mainly, if not entirely, in actions to recover the value of ore taken from mines. Sometimes it became an instrument of oppression in the hands of adverse claimants, and an inconvenient method of trying title to mines. The legislature may have recognized the fact in repealing it; but, however that may be, it is enough to know that the act has been repealed. We are not required to examine other clauses of the act now in force to find out whether that which was repealed is lurking elsewhere; but we must assume that the legislature intended to discontinue the pro-

cess of attachment in all actions originating in trespass to mines. This action is of that character, and therefore the motion to quash will be sustained.

In another case, entitled the *Iron Silver Min. Co.* v. *Joseph Doyle,* the same question is presented, and the same order will be made.