Paul T. CRIST and Stella H. Crist, Virgil J. Rice and Irene M. Rice, and Daniel Foreman as Trustee of The Daniel Foreman Trust Fund, Plaintiffs,

v.

UNITED UNDERWRITERS, LTD., a Colorado corporation, et al., Defendants.

Civ. A. No. 8393.

United States District Court
D. Colorado.

June 3, 1964.

Dawson, Nagel, Sherman & Howard, Raymond J. Turner, Frank P. King, Denver, Colo., for plaintiffs.

Richard L. Ott, Norman E. Berman, Ernest W. Lohf, Denver, Colo., for defendant United Underwriters, Ltd.

DOYLE, District Judge.

In this action the plaintiffs, relying on Rule 64 of the Federal Rules of Civil Procedure and Rule 102 of the Colorado Rules of Civil Procedure, have sued out a writ of attachment against defendant United Underwriters, Ltd., and a writ of garnishment against Pikes Peak National Life Insurance Company, alleged to be a debtor of defendant United Underwriters, Ltd. The defendant and garnishee, respectively, have moved the Court for an order discharging the writs. This motion questions the validity of attachment proceedings pursuant to Rule 102(a) of the Colorado Rules of Civil Procedure before trial in this case.

If the instant action be an "action on contract, express or implied" within the meaning of Rule 102(a) the attachment and garnishment effected before judgment are valid. If the instant action be an action in tort, on the other hand, the attachment and garnishment effected before judgment has entered would appear not to be valid. It appears that the plaintiffs are all residents of the State of Kansas, while the defendant United Underwriters, Ltd., is a Colorado corporation which has its principal place of business in Denver, Colorado. Thus, non-residency affords no ground for attachment.

This action is companion to Trussell v. United Underwriters, Ltd., Civil Action No. 8170 in this Court. Inasmuch as the complaint here is practically identical to that in Trussell, which complaint was examined at length in the opinion of this Court in Trussell v. United Underwriters, Ltd., 228 F.Supp. 757 (D.Colo. 1964), it is appropriate to characterize the claims for relief in Crist in the same manner. So viewed it is apparent that the claims for relief validly asserted by the complaint in the instant action are all claims which arise under Section 10 (b) of the Securities Exchange Act of 1934, alleging that defendants have violated specific provisions of Rule 10b–5, 17 C.F.R. § 240.10b–5.

It is clear from the opinion of Judge Kirkpatrick in Kardon v. National Gypsum Co., 69 F.Supp. 512, 513 (E.D. Pa.1946) that the underlying basis for a private civil action seeking an implied civil remedy under Section 10(b) for violation of Rule 10b–5 is the general law of torts. A private civil remedy exists, held Judge Kirkpatrick, because "[t]he disregard of the command of a statute is a wrongful act and a tort." This was also the rationale underlying the decision in Trussell. The same rationale has been adopted in McClure v. Borne Chemical Co., 292 F.2d 824, 836 (3rd Cir. 1961) and Miller v. Bargain City, 229 F.Supp. 33 (E.D.Pa.1964).

In spite of the fact that the underlying basis for a private action under Section 10(b) is very clearly the general law of torts the plaintiffs assert here that if they choose to tender return of the securities which they purchased and seek a restitionary *remedy*—rather than damages in a compensatory form of demand— the action in which they seek a restitionary remedy is then transmuted into an "action on contract, express or implied" within the meaning of Rule 102(a), Colorado Rules of Civil Procedure, which, pursuant to Rule 64, Federal Rules of Civil Procedure, purportedly empowers attachment in an action brought in federal court. We say that Rule 102(a) purportedly empowers attachment because no statute empowering attachment would appear to be in effect in Colorado. Defendants argue that the remedy of attachment in Colorado has been held to be in derogation of the common law and that statutes empowering attachment must be strictly construed; and, finally, that the remedy of attachment effects a substantive modification of litigants' rights and can only be authorized by statute, but not by court rule. In view of the disposition we make of the question whether an action arising under Section 10(b) of the Securities Exchange Act of 1934 can be characterized as an "action on contract, express or implied" for attachment purposes in Colorado, however, it is not necessary to reach the constitutional question whether the Colorado Supreme Court validly promulgated Rule 102(a), and we intimate no view with respect thereto.

Thus, the determinative question is whether a section 10(b) action is essentially one in tort or in contract. This is one of the cases which has both tort and contract characteristics and is, therefore, in the shadowy area which borders both fields of the law. If we were to approach this from a procedural standpoint, considering in the process the forms of action at common law and the remedies which have evolved, we might well reach a conclusion different from that which is produced by substantive tests. Since the old forms of action are no longer considered important and do not give character

to the claim, the substantive approach would appear to be the most valid and reliable.

Prosser and Corbin take the position that contractual obligations are limited to those which are created by actual consent of the parties. Tort duties, on the other hand, arise by operation of law. These are often imposed contrary to intention which has been manifested. Prosser, Law of Torts, § 81 (2nd ed. 1955); Corbin, 1 Contracts §§ 1, 3, 19 (1963).

In support of the attachment plaintiff argues that the character of the action must be determined by the *remedy* . sought; that the remedy of restitution is always associated with an action in contract or quasi contract. An action sounding in tort, on the other hand, is, according to plaintiff, invariably associated with the demand for compensatory damages. It does not appear, however, that restitutionary remedies are invariably associated with contract actions. To be sure, they are often associated with actions on express contracts or contracts implied in fact. They are also associated, however, with actions in the nature of quasi contract, that is to say, contracts implied in law. Restitution is also common in tort actions. See 46 Am.Jur., Restitution and Unjust Enrichment, page 100; see also Restatement of Restitution, 523 (1937).

The distinction between contracts implied in law and true contracts is discussed by Corbin (1 Corbin, Contracts § 19 (1963)), as follows:

"A distinction has long been suggested between contracts implied in fact and contracts implied in law. A contract that is implied in fact * * * is one sort of an express contract. Something very different is meant by the term 'contract implied in law'; it is an obligation that is created by the law without regard to expressions of assent by either words or acts. Some confusion was caused by the use of the term 'implied contract' to refer to such different kinds of obligation;

and the tendency is now strong to substitute the term 'quasi contract' in place of the term 'contract implied in law.'

"The term 'quasi contract' is directly derived from the Roman law, in which obligations were classified as arising *ex contractu* or *quasi ex contractu* and *ex delicto* or *quasi ex delicto*. The term has the merit of helping to avoid the older confusion by reason of its unaccustomed and foreign form. It has the demerit of being wholly non-descriptive and also of actually continuing a similar confusion. The term quasi is introduced as a weasel word, that sucks all the meaning of the word that follows it; but this is a fact that the reader seldom realizes.

"A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent. If this is true, it would be better not to use the word 'contract' at all. Contracts are formed by expressions of assent; quasi contracts quite otherwise. The legal relations between contractors are dependent upon the interpretation of their expressions of assent; in quasi contract the relations of the parties are not dependent on such interpretation." 1 Corbin, Contracts § 19

Dean Prosser, in his text on Torts (Prosser, Law of Torts §§ 81, 82 [2nd ed. 1955]), makes a similar distinction and at the same time points out that there is no true "waiver of tort" which invariably follows a suit in restitution. This analysis follows:

"* * * With the disappearance of the form of action of assumpsit, the unblushing fiction of the implied promise has generally been discarded, and the remedy has acquired the name of quasi-contract, or restitution.

"Out of this common law procedure there has developed the doc-

trine that where the commission of a tort results in the unjust enrichment of the defendant at the plaintiff's expense, the plaintiff may disregard, or 'waive' the tort action, and sue instead on a theoretical and fictitious contract for restitution of the benefits which the defendant has so received. 'Waiver' of the tort is an unfortunate term, since the quasi-contract action itself is still based on the tort, and there is merely an election of remedies between alternative, co-existing remedies, and the unsuccessful pursuit of the 'implied' contract will not bar a later action for the tort itself * * *" Prosser, Law of Torts § 82 at 487 (2nd ed. 1955)

If a right of action has a common-law origin it may be possible for the plaintiff to premise his action upon either the quasi-contract theory that the law will imply (as a matter of law) a promise to repay money which in equity and good conscience belongs to another; or on the tort theory that the defendant fraudulently obtained money or property from the plaintiff purchaser. In the former case the remedy is conceptually restitutional; in the latter, compensatory. Many decisions, it must be admitted, speak of a plaintiff's choice between these theories as an election to "waive the tort and sue in assumpsit," assuming the existence of alternative bases of liability at common law.

In an action in which the very existence of the cause of action is predicated on a tort theory, however, the remedy sought may be restitutional. In such a case—merely because the measure of damages sought is restitutional rather than compensatory—the action, if conceptually grounded in tort, does not, in our view, cease to be an action in tort. The analysis of the Restatement of Restitution is correct on this point when it observes:

"A person upon whom a tort has been committed and who brings an action for the benefits received by the tortfeasor is sometimes said to 'waive the tort.' The election to bring an action of assumpsit is not, however, a waiver of a tort but is the choice of one of two alternative remedies * * *" Restatement of Restitution 525 (1937)

Applying the above distinction to a Section 10(b) action such as that now before the Court, it is to be noted that the plaintiff may elect to seek either a remedy in damages, which is generally associated with a tort, or he may seek a restitution remedy, which is generally associated with quasi contract.

Whether he seeks restitution or damages does not change the underlying basis for his action, which is in tort. It is no longer necessary to have a fictitious contract or promise in order to give the plaintiff a remedy. When a plaintiff elects to proceed under Rule 10b–5 he is pursuing an implied remedy, one which the federal courts have read into the Securities and Exchange Act of 1934 pursuant to Section 286 of the Restatement of Torts. The federal courts have held that a violation of a criminal statute is also a tort. To say that the plaintiff is pursuing a tort action and at the same time is waiving the tort is anomalous. The plaintiff's action is predicated on a tort theory regardless whether he seeks restitution or compensation. It seems equally anomalous to construe the present action as one "on contract" when viewed in the context of Rule 102(a) of the Colorado Rules of Civil Procedure. The truth is that it is not based on a contract at all; the defendants' obligation to pay could only be said to be based on a "contract" because of the fiction of a "contract implied in law." This fiction was once necessary in order to accomplish substantial justice, but it is not necessary in this context.

Although there is surprisingly little law on this subject, a most interesting and definitive decision was rendered by this Court in 1883. The case was that of Tabor v. Big Pittsburg Consolidated Silver Mining Co., 14 F. 636 (C.C., Colo., 1883). This was an action similar to the one at bar. The Circuit Court,

through Judge Hallett, quashed the attachment in an action wherein the underlying genesis of the case was the commission of various torts. However, the plaintiff sought to "waive" the torts and to sue in an action for money had and received. The plaintiff thus sought recovery upon the theory of unjust enrichment. The Circuit Court considered whether in a quasi contract action attachment was authorized by the then existing Colorado statute which permitted attachment in aid of suit "on contract, express or implied"—the same wording which is before us in Rule 102 (a). In holding that this clause was limited to express contracts and contracts implied in fact, the Court said:

> " * * * The statute of Colorado gives the writ of attachment in actions on contracts express or implied, (Code, § 91) and the question is whether this action is of that character. Taking the ore from the Matchless mine without the consent of the owner was certainly a trespass in which no element of a contract can be found. But it is said that the plaintiff may waive the trespass and sue for the proceeds of the ore as money due on contract. And that proposition is everywhere admitted. Indeed, some courts go further, and say that an action for the value of the property tortiously taken, as for money had and received, may be maintained when the property has not been converted into money. * * *

> "The promise to pay the value of the property or the money received for it in such cases, which gives to the transaction the quality of a contract, is, however, a pure fiction supplied by law to support the action. As it was invented to support the action of *assumpsit* in the old procedure, and the forms of action have been abolished, a learned author suggests very forcibly that it should not be recognized in modern practice. * * *

> "And there are reasons for believing that the *statute governing attachments refers only to contracts existing within the intention of the parties making them.* The conduct of parties is often such as to give form to an agreement or understanding which they do not express in words, but fully intend to carry out; as where one takes an article of merchandise from a store in which he usually deals, with the assent of the owner, but without words, the intention to buy the article at the current price is fully understood, although not expressed. The statute may be taken to refer to such implied contracts [in fact], more than to others, which were invented to support a form of action in the common-law procedure.

> "Plaintiff's counsel presented many cases to show that an action *ex contractu* may be brought for property tortiously taken; but none of them affirm the right to an attachment for the same cause, except in states where the acts [empowering attachment] in terms extend to torts. * * * " [Emphasis added] 14 F. at 636–637.

Plaintiffs' argument that a private right of action arising under Section 10(b) of the Securities Exchange Act of 1934 can be characterized as one "on contract" is thus virtually unprecedented and is unsupported by reason. No decision of any federal court is cited for the proposition. Section 10(b), as we have before noted, makes unlawful the doing of certain acts. A civil action arising thereunder is one in tort, whatever the nature of the remedy sought. This is made yet clearer by the fact that it is Section 29(b) of the Securities Exchange Act of 1934 rather than Section 10(b) which deals with contracts made in violation of the statute or S.E.C. rules and regulations. A civil remedy deriving from the fact that a contract made in violation of the statute and its implementing rules and regulations is in turn made void by Section 29(b) appears not

to be an implied remedy in tort, as is the Section 10(b) remedy for violation of Rule 10b–5. It has been indicated, rather, that the Section 29(b) remedy is an express remedy created by the statute itself. McClure v. Borne Chemical Co., 292 F.2d 824, 837, n. 14 (3rd Cir. 1961). See also Kardon v. National Gypsum Co., 69 F.Supp. 512, 514 (E.D.Pa.1946); 3 Loss, Securities Regulation 1759 (2nd ed. 1961). In the instant case there is no allegation that Section 29(b) comes into play in any way—although it could if there were in fact any contract involved. Indeed, plaintiff cites only one case, Reyer v. Blaisdell, 26 Colo.App. 387, 143 P. 385 (1914) in support of the proposition that under Colorado law an action alleging common-law fraud could be regarded as an action "on contract, express or implied" within the meaning of Rule 102(a). It is well established in Colorado that an action seeking damages occasioned by the defendant's fraud is not an action which will sustain attachment before judgment. Donald Co. v. Dubinsky, 74 Colo. 128, 219 P. 209 (1923).

In the instant case it appears that the assertion of the plaintiff purchaser is that he was "defrauded" in a transaction in which he purchased securities in consequence of defendants' misrepresentations. It further appears that the "contractual" basis for assertion of the right to effect attachment is merely the possible existence of a "contract implied in law" not dependent on any interpretation of the expressions of assent manifested by the parties. Under the rule of the Tabor case, the attachment effected by the plaintiff could not be sustained even if we were to assume that a Section 10(b) action could be characterized as a quasi contract action under certain circumstances. It appears, moreover, that the only authority cited by the plaintiff does not sustain the proposition which he advances. Though the assertion may generally be valid, as respects legal rights which have a common law origin, Reyer v. Blaisdell, supra, does not sustain the proposition that a right of action which has as its genesis the commission of a tortious act by the defendant may be brought either as a quasi contract action in which restitution is sought or, alternatively, as a tort action in which the plaintiff accepts the consequences of the defendant's allegedly tortious act, but seeks compensatory damages.

Reyer v. Blaisdell, it appears on careful reading, was not deemed by the court to be an equitable action in which the remedy of restitution was sought. Neither was it an action on a contract implied in law. The court found, on an examination of detailed facts relating to the relationship between the litigants, that a fiduciary relationship in fact existed between plaintiffs and defendant. From the detailed description of the relationship and the fact that the action was deemed to be one at law rather than in equity, it seems to us that the contract sued upon was one implied in fact. In analyzing the decision in Reyer v. Blaisdell, then, it is essential that we examine what the court did rather than the language used to describe the action. The court concluded in reality, as the evidence indicated, that the plaintiff did not seek a restitutionary remedy. The plaintiff, rather, "adopted defendant's acts," accepted the fruits of the completed transaction, but maintained an action on a contract implied in fact for compensatory damages. In such an action attachment is authorized, as the court held.

On the authority of Reyer v. Blaisdell, we conclude, it cannot be said that a right of action which exists solely because the federal courts have declared that violation of a federal statute is a tort as well as a crime can be transmuted into an action which will sustain an attachment in Colorado because Rule 102 (a) empowers attachment in actions "on contract, express or implied." As interpreted in Tabor v. Big Pittsburg Consolidated Silver Mining Co., supra, the phrase "implied contract" within the meaning of Rule 102(a) is not inclusive of contracts implied in law—which is the sort of "contract" involved here, if indeed any contract be involved.

For the reasons given above, it is, therefore,

Ordered that the writs of attachment and garnishment issued be discharged and held for naught; and it is

Further ordered that the garnishee, Pikes Peak National Life Insurance Company, be not required to file any answer to the purported writ of garnishment which heretofore issued.