BILLINGS ASSOCIATES, INC., Appellant-Respondent, v. EDWIN BASHAW, Respondent-Appellant.

Fourth Department, January 19, 1967.

*Egbert L. Wildman, Jr.,* for appellant-respondent.

*John G. Curran* for respondent-appellant.

GOLDMAN, J.   Plaintiff, a member of the National Association of Securities Dealers, brought this action to recover from defendant, a customer, the loss it suffered by reason of defendant's failure to pay for securities purchased by plaintiff for the defendant.   Although the trial court found that defendant had, through his agent, ordered the securities, it denied recovery and dismissed the complaint on the ground that plaintiff's failure to liquidate the transaction on the seventh day after defendant breached his purchase agreement by nonpayment barred plaintiff " from recovering the deficiency after liquidation ".   We cannot agree with this determination.

Defendant, by his failure to repudiate his agent's order for the stock in question, bound himself to the agreement with plaintiff that plaintiff would purchase the stock for defendant and defendant would pay for it. The stock purchase agreement was not a contract made in violation of, or the performance of which involved a violation of, any rule or regulation promulgated pursuant to the Securities Exchange Act of 1934 (U. S. Code, tit. 15, § 78a *et seq.*). Therefore, the contract was not one which would be declared void under subdivision (b) of section 29 of the act (U. S. Code, tit. 15, § 78cc, subd. [b]). This section applies only to contracts which by their terms actually violate the act. (Cf. *Cohen* v. *Rothchild & Co.*, CCH Fed. Sec. L. Rep. ¶90,849 [S. D. N. Y., 1958] [Civil No. 108-397]; *Crist* v. *United Underwriters*, 230 F. Supp. 136, 141 [dictum].)

The contract between the parties created a "Special Cash Account" transaction. Under subdivision (c) of section 4 of regulation "T" of the Board of Governors of the Federal Reserve System (Code of Fed. Reg., tit. 12, § 220.4, subd. [c], par. [2]), a customer who purchases a security in a Special Cash Account must make full cash payment within seven days after the purchase date. If such payment is not made, the broker must promptly liquidate the transaction. Here the customer failed to pay and the broker failed to liquidate for about one month past the liquidation date. Such a failure on the part of the broker was an unlawful extension of credit, proscribed by subdivision (c) of section 7 of the Act (U. S. Code, tit. 15, § 78g, subd. [c]) and may, under certain circumstances, be a basis for disciplinary action against the broker by the Securities Exchange Commission, and may even affect the broker's license. (See *Matter of John W. Yeaman, Inc.*, CCH Fed. Sec. L. Rep. ¶77, 202 [1965]; *Matter of Coburn Co.*, CCH, Fed. Sec. L. Rep. ¶77, 219 [1965]; *Matter of Madison Mgt. Corp.*, CCH Fed. Sec. L. Rep. ¶77, 151 [1964].) However, we are dealing here with a customer-broker relationship and the respective rights of the parties created by the agreement between them. As a matter of public policy, the broker should not be permitted to reap any benefit from an unlawful act, even though the customer may have participated in the arrangement. An example of such a situation would be an agreement by the broker at the inception of the contract of purchase that the customer need not pay for the stock until some time after the seven-day period (*Myer* v. *Shields & Co.*, 25 A D 2d 126). However, where the purchase transaction is the usual situation in which a customer simply orders the purchase and the broker executes it, as in the case at bar, the broker is entitled to recover his damages caused

by the customer's breach; that is, the failure to pay by the seventh day. The measure of damages is the difference between the purchase price of the stock and the highest market price thereof between the seventh day and the date of sale by the broker. Such a formula of damages is consonant with the purpose and philosophy of the Securities Exchange Act and affords maximum protection to the customer. We compute the damages as $3,525 and the plaintiff should have judgment for this amount on its cause of action.

The trial court properly determined that defendant should have judgment on his counterclaim. However, a new trial of the counterclaim for conversion is required solely to determine damages. Defendant's damages are not to be measured by the highest value of the securities prevailing during a reasonable period following the conversion, as ordered by the trial court, but rather by the highest value of the securities prevailing during a reasonable period following the date of notice of the conversion, which was October 2, 1964 in the case of the Consolidated Mogador stock, and October 9, 1964 in the case of the Base Metals stock (see *Mayer* v. *Monzo*, 221 N. Y. 442). Execution of the judgment for plaintiff in the sum of $3,525 and interest should be stayed until the determination of the amount due defendant on his counterclaim. After determination of this amount the defendant should be awarded judgment for the net amount due him after offsetting the amount due plaintiff as set forth above.

MARSH, J. (dissenting in part). The statute specifically proscribes a performance of a securities contract which violates certain credit requirements (Securities Exchange Act of 1934, § 7, subd. [c]; par. [1]; U. S. Code, tit. 15, § 78g, subd. [c], par. [1]). Subdivision (b) of section 29 (U. S. Code, tit. 15, § 78cc, subd. [b]) making void any contract whose performance involves a violation of any rule or regulation, is applicable to regulation "T" (§ 4, subd. [c]; Code of Fed. Reg., tit. 12, § 220.4, subd. [c]) of the Federal Reserve Board. There is nothing in subdivision (b) of section 29 which would limit its application only to those contracts between a customer and a broker which on their face call for a violation of the credit requirements or other provisions of the act. If such were the case, subdivision (b) of section 29 should read "the performance of which requires the violation of,", instead of "involves the violation of" provisions of the act. An interpretation which requires express contractual language in a written or oral contract mandating a violation of the act to make subdivision (b) of sec-

tion 29 applicable would leave a large loophole for evasion, and would not be in accord with the broad purposes envisioned by the credit requirements.

It would be a simple matter for a broker to let it be known that he would not abide by the seven-day rule, but would allow his customers to pay for their cash security transactions in a variety of ways and over variable time periods. It is the broker who has it within his power to extend credit in violation of the act, and upon him the onus for committing such violations falls. The rendering uncollectible of debts incurred in proscribed credit extension would appear to be the effective manner of imposing sanctions contemplated by the statute looking toward the enforcement of the act, irrespective of whether there has been an explicit contractual arrangement which, by its agreed terms, requires a violation of the credit provisions of the act.

The judgment, insofar as it dismisses plaintiff's complaint, should be affirmed.

WILLIAMS, P. J., and HENRY, J., concur with GOLDMAN, J.; MARSH, J., dissents in part and votes to affirm the judgment insofar as it dismisses plaintiff's complaint in opinion, in which DEL VECCHIO, J., concurs.

Judgment insofar as it dismisses plaintiff's complaint reversed on the law and judgment granted to plaintiff in the amount of $3,525 and execution of judgment stayed in accordance with the opinion; judgment insofar as it awards damages to the defendant on his counterclaim against the plaintiff reversed, on the law and facts, and a new trial granted on the issue of damages only, all without costs.