[Civ. No. 33784. Second Dist., Div. Three. Nov. 20, 1969.]

GREGORY-MASSARI, INC., Plaintiff and Appellant, v. CLAUDE H. PURKITT et al., Defendants and Respondents.

## COUNSEL

DeSantis, Gordon, Lipstone & Rich and Richard A. DeSantis for Plaintiff and Appellant.

Claude H. Purkitt and Mimi Peterson Purkitt, in pro. per., for Defendants and Respondents.

## OPINION

**SHINN, J.**\*—Gregory-Massari, Inc., a corporation, a registered broker-dealer in securities, brought suit against Claude H. Purkitt and his wife, called Mimi Peterson, for damages in the amount of $20,862.89 claimed to have been suffered by plaintiff as a result of the failure of the defendants to pay for a security they bought from the plaintiff.

The facts of the transaction are before us in a settled statement, the court's findings, certain exhibits, and admissions of the pleadings. On February 13, 1964, the defendants maintained accounts with the broker; plaintiff accepted an offer of Purkitt on behalf of his wife to buy 300 shares of Syntex at $132 per share or a total of $39,756.60. Plaintiff mailed to defendants and they received a confirmation of the sale which contained the statement "Federal Reserve Board Regulations require that securities sold or payment for securities purchased be received in our office not later than payment date indicated." The "payment or delivery due date" stated on the slip was February 19, 1964. Defendants have paid no part of the purchase price. February 13, 1964, plaintiff accepted an order from Purkitt to sell the stock at $138 per share; on the following day plaintiff accepted Purkitt's order to sell it at $137-¼ but the market did not reach either figure, and no sale was made.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

The court found that in several transactions Purkitt had requested that stock purchased be sent to a bank for collection, but there was no finding or evidence of an agreement when the Syntex shares were purchased that they would be paid for only when they were delivered. There was no evidence of an agreement fixing any date for payment other than as stated on the confirmation slip. From time to time Purkitt promised to pay the debt. At some time, which was not definitely fixed, Purkitt requested that the shares be sent to a bank for collection; the certificates became available to plaintiff March 20, 1964, and were sent to Purkitt's bank for collection, but the accompanying draft was not honored. Plaintiff discontinued its security business immediately after February 28, 1964, retained the shares and sold them April 24, 1964, at $63.50 per share, or $18,893.71 for a loss of $20,862.89. The action is for recovery of this amount. The court rendered judgment in favor of the defendants, and plaintiff appeals. (Judgment on a cross-complaint of defendants was adverse to them, and they have not appealed.)

 The basis of the judgment under appeal was the court's holding that the transaction was in violation of federal law, and there could be no recovery by plaintiff for defendants' breach of their contract. That is the critical question on the appeal.

The applicable law is found in Code of Federal Regulations, part 220, title 12, Regulation T and United States Code, title 15, section 78cc, subdivision (b) commonly known as section 29 of the Securities and Exchange Act of 1934.

Pertinent provisions of Regulation T which are found in "Section 4. Special Accounts" reads as follows: "(c) Special cash account—(1) In a special cash account, a creditor may effect for or with any customer bona fide cash transactions in securities in which the creditor may—(A) purchase any security for, or sell any security to, any customer, provided funds sufficient for the purpose are already held in the account or the purchase or sale is in reliance upon an agreement accepted by the creditor in good faith that the customer will promptly make full cash payment for the security and that the customer does not contemplate selling the security prior to making such payment; or . . . (2) In case a customer purchases a security (other than an exempted security) in the special cash account and does not make full cash payment for the security within 7 days after the date on which the security is so purchased, the creditor shall, except as provided in the succeeding subdivisions of this section 4(c), promptly cancel or otherwise liquidate the transaction or the unsettled portion thereof. . . . (4) If any shipment of securities is incidental to the consummation of the transaction, the period applicable to the transaction under subdivision (2) of this section 4(c) shall be deemed to be extended by the number of days required for all

such shipments, but not by more than 7 days. (5) If the creditor, acting in good faith in accordance with subdivision (1) of this section 4(c), purchases a security for a customer, or sells a security to a customer, with the understanding that he is to deliver the security promptly to the customer, and the full cash payment to be made promptly by the customer is to be made against such delivery, the creditor may at his option treat the transaction as one to which the period applicable under subdivision (2) of this section 4(c) is not the 7 days therein specified but 35 days after the date of such purchase or sale." In pertinent part said section 29 of the act (15 U.S.C. § 78cc(b)) reads as follows: "(b) Every contract made in violation of any provision of this chapter or any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, . . ." The court found: "Plaintiff's failure to sell out defendant's Syntex shares within 7 days after February 13, 1964 was a violation of Federal law, specifically part 220, Title 12, Code of Federal Regulations, commonly known as Regulation T and 15 United States Codes 78cc, commonly known as Section 29 of the Securities and Exchange Act of 1934."

Having implicitly found that the transaction was governed by paragraph (c) (2) of section 4 which requires prompt cancellation or liquidation of the account if payment is not made within 7 days, rather than by (5) under which the time may be extended to 35 days, the court correctly concluded that plaintiff's failure to liquidate the account at the expiration of 7 days was a violation of Regulation T. However, it does not follow that the violation of that regulation rendered the transaction void so as to deprive plaintiff of the right to sue on its contract for the damage it has suffered. Violation of a regulation is one thing; entering into a contract that is in violation of federal law is quite another. For its conclusion that the transaction was void and that plaintiff was without remedy the court relied upon section 29(b) quoted above. This, we believe, was a misapplication of that section.

The question whether a broker forfeits all rights under his contract by failing to liquidate an account at the expiration of seven days has seldom been considered in the reported cases. Only two such cases have been cited by the parties, and we have found no others. The cases are directly in point. The controlling facts were essentially the same as those of the instant case, and the question of law was the same. The two courts of different jurisdictions arrived at legal conclusions that were in direct conflict. Plaintiff relies

upon *Billings Associates, Inc.* v. *Bashaw,* 27 App.Div.2d 124 [276 N.Y.S. 2d 446]. The contract was one by which the customer purchased securities under a "Special Cash Account" and became obligated to make payment within seven days; the selling broker was required to liquidate the account if not paid for within seven days. The broker did not liquidate the account for about one month, when it sold the stock at a substantial loss. The broker sued for the amount of this loss. The trial court gave judgment for the defendant, holding that the plaintiff's failure to liquidate the account within seven days barred a recovery. The Supreme Court, Appellate Division, reversed. The opinion stated: "Defendant, by his failure to repudiate his agent's order for the stock in question, bound himself to the agreement with plaintiff that plaintiff would purchase the stock for defendant and defendant would pay for it. The stock purchase agreement was not a contract made in violation of, or the performance of which involved a violation of, any rule or regulation promulgated pursuant to the Securities and Exchange Act of 1934. (U.S. Code, tit. 15, § 78a et seq.) Therefore, the contract was not one which would be declared void under section 29(b) of the Act (15 U.S.C. § 78cc, subd. [b]). This section applies only to contracts which by their terms actually violate the Act. Cf. *Cohen* v. *G. F. Rothchild & Co.,* CCH Fed. Sec. L. Rep. ¶ 90,849 (S.D.N.Y. 1958) (Civil No. 108-397); *Crist* v. *United Underwriters, Ltd.,* 230 F. Supp. 136, 141 (dictum). . . .

"However, where the purchase transaction is the usual situation in which a customer simply orders the purchase and the broker executes it, as in the case at bar, the broker is entitled to recover his damages caused by the customer's breach; that is, the failure to pay by the seventh day."

In our case the entire contract was that plaintiff would sell the stock to defendants and defendants would pay for it. Performance of the agreement required no other action by either party. Liquidation of the debt in the event of defendants' default was no part of the agreement. Plaintiff did not agree to sell the stock after seven days, or at all. Its duty in that respect was imposed by the regulation. Failure to liquidate the account promptly was in violation of Regulation T but it was not a violation of the contract, which did not directly or impliedly involve any illegal action in its performance. Section 29(b) (15 U.S.C. § 78cc(b)), which relates only to contracts, is inapplicable.

The case upon which the defendants rely is *Staley* v. *Salvesen* (1963) 35 Pa.D. & C.2d 318. The facts of the case were that on May 6, 1959, the defendant Salvesen bought stocks from Reynolds & Co., a securities' broker, for $14,305.02; the stated settlement date was May 12, 1959; the stock was to be delivered to a bank through which payment would be made; Salvesen made arrangement for payment; efforts of the broker to contact him were unsuccessful, and nothing was paid on the account. The broker received

from the Philadelphia-Baltimore Stock Exchange an extension to May 22, 1959, for the closing of the transaction. June 10, 1959, the stocks were sold at a loss of $2,583.11; suit was brought against Salvesen for this amount, plus interest, on behalf of Reynolds & Co., but in the name of Staley. Judgment was rendered in favor of Salvesen, but no appeal was taken.

In her opinion the trial judge mentioned numerous sanctions that may be imposed for violation of federal credit regulations and stated, "In addition to receiving sanctions, the violator of the act and regulations thereunder may lose rights, for section 29(b) of the act [quoted in relevant part] makes void, as to the violator, every contract either (1) made in violation, (2) performed in violation, or (3) the performance of which involves the continuance of any relationship or practice in violation: (Cases.)" In this paraphrasing of the section the use of the words "performed in violation" instead of "the performance of which involves the violation of" led the judge to the erroneous conclusions that liquidation of the account was a part of the purchase contract; that a violation of the regulation was a violation of the contract and that the transaction was illegal and void under section 29(b). The contract, of course, did not encompass liquidation of the account, but even if it had, it would not have "involved" a violation of the regulation. The mistake in *Staley* was the one made by the trial court in *Billings, supra*, which was corrected on appeal. The reasoning and conclusion in the latter case are sound, and we are in full agreement.

■ The judgment must be reversed for a retrial of the issue of damages. The measure of the plaintiff's damage will be the difference, if any, between the contract price of the stock and the price that could have been obtained if the stock had been sold promptly or the highest price for which it could have been sold prior to the date of sale, whichever price was the higher.

There is no merit in plaintiff's contention that its delay in selling the stock was excusable under 12 C.F.R. 220.6(k) which provides that innocent clerical mistakes of a certain nature would not constitute a violation of Regulation T.

■ Plaintiff discontinued its securities business immediately after February 28th. Plaintiff produced evidence that it had been advised by a representative of the Pacific Coast Stock Exchange that it would not be bound to comply with Regulation T after it had gone out of the security business, and the contention is that it properly relied upon that advice. The claim is untenable. By its contract with the defendants, plaintiff became bound by force of law to proceed legally, and it could not shed itself of its duty by voluntarily discontinuing its securities business.

■ The contention that defendants should be held estopped to charge plaintiff with a violation of the regulation because of their repeated promises

to pay the debt has no merit. The parties could not waive indirectly compliance with the regulation which they could not waive directly.

■ If there is a doubt whether the violation of the regulation was in issue under the pleadings and the pretrial proceedings, as plaintiff contends, it can be removed upon a retrial. The objection of plaintiff that the question was not properly before the court was purely technical. The defendants did not, as plaintiff contends, admit that the sale of the stock complied with federal law. The compliant alleged the stock was sold pursuant to "Federal Law;" the answer admitted a sale was made but denied it was made pursuant to federal law. It was incumbent upon plaintiff in stating a cause of action for damages to allege and prove that the action upon which its claim was founded complied with the law. The issue was fairly presented by the pleadings, and plaintiff was not misled in that respect. In any event, the case was fully and fairly tried without error which could be held prejudicial.

In view of our conclusion that the issue of damages must be retried, other claims of error asserted by plaintiff need not be discussed.

The judgment is reversed for retrial of the single issue of damages in accordance with the foregoing views.

Cobey, Acting P. J., and Schweitzer, J., concurred.